KELLOGG VS. THE SUPERVISORS OF WINNEBAGO COUNTY.

COUNTIES: ACTIONS: ILLEGAL TAXES. *(1) What claims against county suable without presentation to county board. (2) What part of illegal taxes on personal property recoverable from county.*
DOMICILE: *(3) Once acquired, how lost.*

1. An action against a county to recover moneys paid upon a tax on personal property alleged to have been illegal upon the ground that plaintiff was not a resident of the county at the time when such tax was assessed, may be brought *without first presenting the plaintiff's claim to the county board* of supervisors: the controversy necessarily involving an examination of witnesses, and the determination of a difficult question of law, and the claim not being an "account" within the meaning of ch. 13, R. S., nor included in the provisions of sec. 30, ch. 22, Laws of 1859.
2. Under our laws touching the assessment and collection of taxes, where an illegal tax upon personal property (for state, county and city purposes) has been returned delinquent by a city treasurer to the county treasurer, and has afterwards been collected by the latter under circumstances which save the taxpayer's right of recovery, *the county* is liable for the whole amount except the state tax; but whether it is also liable for the latter is not here determined.
3. For purposes of taxation, a person must have a residence or domicile somewhere, and cannot abandon a domicile once acquired, until he has actually acquired another.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action to recover certain moneys paid by plaintiff, under protest, to the treasurer of the defendant county, as delinquent taxes assessed upon plaintiff's personal property in the city of Oshkosh, in said county, for the years 1871 and 1872. The ground upon which the taxes are alleged to have been invalid is, that at the time of their assessment plaintiff was not, and for a long time prior thereto had not been, a resident of said city, or of this state, and had no agent, office or place of business in this state. The answer denied these averments, and also alleged " that of the sum of $1,829.68 so assessed and levied against the plaintiff in 1871, the sum of $261.38 was county and state taxes, and the balance taxes for said city of

Oshkosh; and that of the $1,503.75 so levied and assessed against plaintiff in 1872, $370.25 was county and state taxes, and the balance such city taxes."

At the trial, defendant objected to the introduction of any evidence under the complaint, on the ground that it did not state a cause of action; but the objection was overruled. The instructions given, and those refused, upon which the decision of this court turns, will sufficiently. appear from the opinion.

Verdict for the plaintiff for the full amount claimed by him; new trial denied; and appeal taken by defendant from a judgment on the verdict.

*Gabe Bouck*, for the appellant, contended, among other things, 1. That an action of this character can only be based upon the fact that the defendant municipality has received moneys for its use which in justice it ought not to retain; and that it must therefore appear, by the complaint and proofs, that defendant actually received the alleged illegal taxes *for its own use*, and not merely as an agent or instrument to assess and collect the same for the benefit of some other public corporation. *Matheson v. Mazomanie*, 20 Wis., 191; *Vt. Central Railroad Co. v. Burlington*, 28 Vt., 193; *Spear v. Braintree*, 24 id., 414; *Slack v. Norwich*, 32 id, 818; 2 Dillon on M. C., 857, § 751; Cooley on Taxation, 565–6, 569, 570, and cases cited in notes. There is no allegation in the complaint that any of the taxes in dispute were county or state taxes, or were levied by or collected for the use of the defendant county, or that said county has ever used or enjoyed the same; but on the contrary it is alleged that the same were taxes levied by the common council of the city of Oshkosh; and that council levies only the city taxes. Tay. Stats., ch. 18, §§ 11, 13, 14, p. 269; Charter of Oshkosh (P. and L. Laws of 1868, ch. 501), ch. VII, sec. 2. There was no allegation or proof that the county ever had any use of any part of these taxes. True, the county treasurer collected them; but in so doing he only acted as the agent of the city, and, when col-

lected, it was his duty to pay them over to the city. R. S., ch. 18, sec. 169; Charter of Oshkosh, ch. VIII, sec. 6. The money did not become a part of the county funds; and the presumption is, that the county treasurer discharged his official duty, and paid the money over to the city. 2. That when the county treasurer is engaged in the performance of official duties prescribed by law, as in the collection of these taxes, he is not under the control of the county board, but acts independently thereof, and the county is not liable. 2 Dillon on M. C., 88, §§ 772–3, and cases cited in the notes; *Lorrillard v. Monroe*, 12 Barb., 161, and 11 N. Y., 372; *The People v. Supervisors of Chenango*, 11 N. Y., 563; *Ham v. Mayor, etc.*, 37 N. Y. Sup. Ct., 458. 3. That if the county is liable, the plaintiff should have made a demand before suit, by presenting his claim for allowance to the county board. That board has no control over the acts of the county treasurer, and the treasurer, if the delinquent return is regular on its face, has no authority to determine that the tax was unlawful, or to refund the money. It would, therefore, be a hardship for the county to be made liable before its board had an opportunity to remedy the alleged wrong. This case does not come within *Stringham v. Winnebago Co.*, 24 Wis., 599. That was a claim for moneys paid upon illegal tax certificates. This is for illegal taxes paid; and sec. 30, ch. 22, Laws of 1859, confers upon the county board power to refund taxes illegally assessed. 4. That the court erred in holding that a person can be without a place of residence, and can abandon a residence once acquired, without acquiring another, and that such abandonment can be by mere intention. The true doctrine is, (1) That every person must have a residence, to determine his political and civil rights and obligations, including the payment of taxes, and a residence once acquired cannot be lost until another is acquired. *Abington v. North Bridgewater*, 23 Pick., 177; *Littlefield v. Inhabitants of Brooks*, 50 Me., 475; *Bulkley v. Inhabitants of Williamstown*, 3 Gray,

493; *Sears v. Boston*, 1 Met., 250; *Kilburn v. Bennett*, 3 id., 199; *Barrett v. Black*, 25 Ga., 151; *First National Bank v. Balcom*, 35 Conn., 351; *Crawford v. Wilson*, 4 Barb., 519; *Folger v. Slaughter*, 19 La. An., 323; *White v. White*, 3 Head (Tenn.), 404; *Hulett v. Hulett*, 37 Vt., 582; *Chaine v. Wilson*, 1 Bosw., 673; *Isham v. Gibbons*, 1 Bradf., 69; *Sherwood v. Judd*, 3 id., 267; 4 id., 127; *Clark v. Likens*, 2 Dutch., 207; *Glover v. Glover*, 18 Ala., 367; *Horne v. Horne*, 9 Ired., 99; *Stoddert v. Ward*, 31 Md., 562.   (2) That the abandonment of the old and acquirement of a new residence cannot be by *mere intention*, but must be *facto et animo*, the party doing in his new place of abode such acts as usually constitute residence, with the intention of remaining there permanently, and so rendering himself legally liable there to all the duties and obligations of a resident.   *First National Bank v. Balcom*, *supra; Leach v. Pillsbury*, 15 N. H., 137; *State v. Daniels*, 44 id., 383; *Boardman v. House*, 18 Wend., 512; *Ely v. Lyons*, id., 644; *Frost v. Brisbin*, 19 id., 11; *Graham v. Public Adm.*, 4 Bradf., 127; *Hegemen v. Fox*, 31 Barb., 475; *Henrietta v. Oxford*, 2 Ohio St., 32; *McIntyre v. Chappell*, 4 Tex., 187; *Holmes v. Greene*, 7 Gray, 300; *Thorndike v. Boston*, 1 Met., 242; *Harvard College v. Gore*, 5 Pick., 370; *Jennison v. Hapgood*, 10 id., 77; *Hallowell v. Saco*, 5 Me., 143; *Somerville v. Somerville*, 5 Ves., 787; *Abington v. Bridgewater*, *Bulkley v. Williamstown, and Littlefield v. Brooks, supra.*   Counsel further contended that the terms "domicile" and "residence" mean the same thing, and that the word "inhabitant" is also equivalent to "resident." *Hall v. Hall*, 25 Wis., 607; *Crawford v. Wilson*, 4 Barb., 518; 1 Bradf., 505; 1 Harring., 383; 1 Spencer (N. J.), 328; 2 Rich., 489; 10 N. H., 452; 3 Wash. C. C., 550; 23 Pick., 170; 5 Met., 298.

For the respondent, a brief was filed by *Finches, Lynde & Miller*, and the cause was argued orally by *H. M. Finch*. They contended that it was clear from the evidence in this

Kellogg vs. The Supervisors of Winnebago County.

case, that the plaintiff left Oshkosh on the 23d of January, 1871, with the avowed purpose of never again making it his home; that he carried away with him all his property; that he did not return to that city until September 14, 1871, and then only for a temporary purpose; that he took a room in Chicago, and actually occupied it; that he did everything he could by word and act to show that he had left Oshkosh with the intention of never again making it his residence; and that he never did return for that purpose. Upon these facts he was not a resident of Oshkosh when the taxes here in dispute were assessed. *Briggs v. Inhabitants of Rochester*, 16 Gray, 337; *Wade v. Matheson*, 4 Lans., 160–1; *North Yarmouth v. West Gardiner*, 58 Me., 207; *In re Fitzgerald*, 2 Caines, 317; *In re Thompson*, 1 Wend., 43; *In re Wrigley*, 4 id., 605; *S. C.*, 8 id., 134; *Frost v. Brisbin*, 19 id., 11; *Bartlett v. City of New York*, 5 Sandf., 44; *Colton v. Longmeadow*, 12 Allen, 598; *Dutcher v. Dutcher*, 39 Wis., 658.

COLE, J. I. The objection that the plaintiff should have presented his claim to the county board for allowance, cannot prevail. The action is brought to recover moneys paid upon an alleged illegal tax upon personal property. The question as to the invalidity of the tax depends essentially upon the inquiry whether the plaintiff was liable to taxation in the city of Oshkosh when the taxes were levied. If, for the purposes of taxation, the plaintiff had actually changed his residence or domicile, and acquired a new one elsewhere, then he was not subject to taxation in Oshkosh. It will therefore be seen that the controversy necessarily involved the examination of witnesses, and an investigation of some of the most difficult questions of law and fact which could be presented to any tribunal. The county board is clothed with no power for the proper examination and decision of such difficult questions. They were "proper to be investigated in some court of general legal or equitable jurisdiction," which was vested with powers

and jurisdiction adequate to their examination and decision. The language of DIXON, C. J., in *Stringham v. The Board of Supervisors of Winnebago County*, 24 Wis., 594, is in all respects applicable and pertinent to the case before us. Speaking of the claim against the county in that case, he said: "The claim presented involved a long and tedious trial or investigation of most difficult and complex matters of fact. Numerous witnesses must have been examined, both for and against the petitioner, and not only as to the value of the several lots of the petitioner, which numbered upwards of two hundred and forty, but also as to the value of all other adjacent lots; and all the circumstances which affect the price or value of real estate in our large towns and cities, increasing or diminishing it, must have been inquired into and discussed. Besides these, the questions of law involved were of the most grave and serious character. They were such questions as are proper, and proper only, to be investigated in some court of general legal or equitable jurisdiction. That it was never the intention to charge the board of supervisors with the investigation and decision of such questions, seems to me too clear to admit of doubt." p. 597. For these reasons, we think the county board had no jurisdiction to try the question whether the taxes in this case were legally levied. The claim was not an "account," within the meaning of the statute, ch. 13, R. S. Nor was it included in sec. 30, ch. 22, Laws of 1859, which applies to a different class of cases.

II. Another objection taken is: conceding the taxes to be illegal, still it is claimed that an action could not be maintained against the county for their recovery. For it is said the action is equitable in its nature, for money had and received, and is wholly predicated upon the fact that the municipality has received such tax for its use, which it is against justice and equity that it should retain. In other words, it is said that it must appear, before the county is held liable to respond, that the county has actually received the money into

its treasury for its own use and benefit, and has not acted as the agent of the city in collecting it. The taxes in dispute were levied for state, county and city purposes. Under our system, the state tax is apportioned and levied through the agency of the secretary of state, the clerk of the county board, and the town and city clerks (Tay. Stats., ch. 18, §§ 5, 13, 64 and 65, and ch. 501, P. and L. Laws of 1868, p. 1334, sec. 3); the county tax by the county board (sec. 11, ch. 18); and the city tax by the common council (ch. 501, *supra*, p. 1353). But when the various taxes are collected by the town or city treasurer under the law, the state tax is paid over to the county treasurer; the town or city tax is retained (sec. 67, ch. 18); and the town or city, in the settlement with the county treasurer, receives credit for the unpaid taxes returned. Secs. 113 and 114, ch. 18; and *Winchester v. Tozer*, 24 Wis., 312; *Wolff v. Stoddard*, 25 id., 503. By this method of adjustment of accounts between the county and city, the delinquent taxes returned belonged to the county, except in a contingency which it does not appear existed in this case, and which, therefore, need not be dwelt upon. And when the plaintiff paid to the county treasurer his delinquent tax under the proceedings taken against him for its collection, no part of it was received for the use of the city, but it all belonged to the county. The county, therefore, receiving the money and having the benefit of it, is liable for its repayment, if the tax was illegal. This is doubtless true in respect to all except the state tax; but whether the county would be liable for the repayment of that, may admit of some question. In the case of *Matheson v. The Town of Mazomanie*, 20 Wis., 191, it was decided that the recovery must be limited to the amount of taxes received by the defendant for its own use, and could not include that which it held or had collected for the benefit of another public corporation. Whether the doctrine of that case would relieve the county from the payment of any portion of the taxes in dispute, is a point in some doubt upon the facts in

the record. It does not appear what the amount of the state tax was — the whole controversy turning upon the question whether the county was liable to refund any portion of the taxes whatever. On that point we are clear, that, if the taxes were illegal, the county is at least bound to refund whatever was collected for city and county purposes. Further than this it is not necessary to decide at the present time.

III. It is insisted that the taxes were illegal, on the ground that in May, 1871, and in May, 1872, the time fixed by law for listing personal property for taxation, the plaintiff was not a resident of the city of Oshkosh. A certain class of personal property is taxable, under the statute, in the place where it is located, without regard to the residence of the owner. The property of nonresidents is taxable in certain cases. But the general rule is, that personal property is assessed for taxation where the owner resides (Tay. Stats., ch. 18, §§ 43 et seq.). In this case it was clearly established by the evidence, that the plaintiff, an unmarried man, had, for a number of years prior to the 23d day of January, 1871, been a resident of, and had done business in, the city of Oshkosh. About this there was no dispute. But about the 23d of January, 1871, he claims that he abandoned Oshkosh as his place of residence, and went to Chicago with the intention of making that city his home in future. According to his testimony, he went to the house of his friend Mr. Clark, in Chicago, on the 24th day of January, where he remained three days, and then set out for Europe. He returned from Europe, and arrived at New York on the 23d of August, 1871; stayed there a day; then went to Amherst, Mass., where he remained a week or ten days; then went to Chicago, where he remained until the 14th of September; then went to Oshkosh, where he remained most of the time until the 6th of November, when he went to Chicago, and voted at the general election; returned the next day to Oshkosh, where he remained until the 28th of November; then went to Chicago, where he remained about a week; then

went to Kentucky, where he remained three or four days; returned to Oshkosh, where he remained until the 21st of December; then went to Amherst, Mass., where he remained until the 9th of February, 1872, when he started for California, stopping at St. Louis *en route* about four days, at Kansas City three days, at Colorado Springs ten days; arrived at Oakland, California, on the 11th of March; staid there until the 20th; then went to the southern part of California, where he staid until the 13th of April; then returned to Oakland and San Francisco, where he remained until the 21st of May, 1872. He afterwards traveled to different parts of California, Oregon and the western territories, and got back to Oshkosh about the 16th of July. For the next seventeen months he traveled about in Wisconsin, making short stops at different places; went to Chicago, where he remained a day or so; visited Kentucky; returned to California; made a trip to Mexico, and then back to California, and to Wisconsin; and finally went to Green Bay to live, in December, 1873. During these wanderings to and fro in the land, he often returned to Oshkosh. His health was poor, and he engaged in no permanent business anywhere. He paid no taxes all this time, except in Chicago in 1871, and in California in 1873, on a very inconsiderable portion of his personal estate. His property was considerable, consisting mainly of bank stock in the First National Bank at Oshkosh, United States and state bonds, and notes secured by mortgages on real estate in Winnebago county. In his testimony he said: "I claim that my domicile in Chicago was from the 23d of January, 1871, until March, 1872; in Oakland, Cal., from March, 1872, until December, 1873; from December, 1873, to this time, at Green Bay."

Under the instructions of the circuit court, the jury specially found that the plaintiff did abandon Oshkosh as his place of residence on the 23d day of January, 1871, and removed his personal property therefrom, and that he did not ever again resume or take up his residence at that city. The

jury further found that the plaintiff did not have an agent or place of business in Oshkosh, either on the first day of May, 1871, or on the first day of May, 1872, when his personal property was assessed for taxation. The circuit court charged, among other things, that, to constitute a residence, there must be a settled, fixed abode, an intention to remain permanently at a place, at least for a time, for business or other purposes; that a residence could not be changed by a mere intent, but that the intent and fact of change of residence must concur. The court, however, refused to charge at the request of the defendant, that for the purpose of taxation a person must have a residence somewhere; and that when a fixed residence was once acquired, it continued until another residence was acquired and substituted therefor; but directed the jury that they must regard Oshkosh as the plaintiff's residence on the 22d of January, 1871, and until they found that he had acquired a residence in some other locality, or had *abandoned his residence in Oshkosh and had permanently removed therefrom.*

It is obvious, therefore, that, upon the law as submitted, the jury might well have found, as they did, in answer to the questions, that the plaintiff had abandoned his residence at Oshkosh and had removed his personal property therefrom, while he had not acquired a new residence or domicile elsewhere. The learned counsel for the defendant insists that this view of the case was erroneous and must work a reversal of the judgment. We think his position is sound in principle, and that it is abundantly sustained by the authorities which he has cited. For the purpose of taxation and the discharge of those duties which every person owes to society and the government that protects him, a person cannot be without a residence or domicile so that if he quits a place with intent to take up his residence or domicile in another, he may, while *in transitu,* have no domicile. "But the more correct principle would seem to be, that the original domicile is not gone

Kellogg vs. The Supervisors of Winnebago County.

until a new one has been actually acquired *facto et animo.*"
Story on Conflict of Laws, § 47. We use the words "resi-
dence" and "domicile" interchangeably, as synonymous terms
under our statute. *Hall v. Hall,* 25 Wis., 600. And, in the
language of SHAW, C. J., we say: "The general rule, and, for
practical purposes, a fixed rule, is, that a man must have a
habitation somewhere; he can have but one; and therefore, in
order to lose one, he must acquire another. This is the test,
the practical test; and it is hardly necessary to say how im-
portant it is to have a practical rule and a general rule. One
of the fixed rules on the subject is this: that a purpose to
change, unaccompanied by an actual removal or change of
residence, does not constitute a change of domicile." *Bulk-
ley v. Inhabitants of Williamstown,* 3 Gray, 493–495. See
*Abington v. North Bridgewater,* 23 Pick., 170. In the case
of *Briggs v. Inhabitants of Rochester,* 16 Gray, 337, it is
said that the words in the Massachusetts statute, "in the town
where the owner is an inhabitant," do no not mean the town
where he has a domicile in a strictly technical sense, the court
making a distinction between the words "inhabitancy" and
"domicile," which was impliedly repudiated in *Hall v. Hall.*
Our attention has likewise been called to certain decisions in
relation to the settlement of paupers; but we think they are
not applicable to the question before us. See *Littlefield v.
Inhabitants of Brooks,* 50 Me., 475. The rule which we
adopt is consequently this: As the plaintiff had a fixed and
distinct residence in the city of Oshkosh for many years prior
to the 22d day of January, 1871, for the purpose of taxa-
tion, that residence must be deemed to have continued until
he had acquired a new residence elsewhere. Abandonment
of Oshkosh with the intention of taking up his residence in
Chicago, and even the removal of his property therefrom, is
not sufficient, so long as he did not actually acquire a new res-
idence or domicile there. This is a just, wise rule, founded
in reason and supported by authority. Every person should

contribute his fair share towards the maintenance of the government which protects him, and whose benefits he enjoys. Neither justice nor equity requires the adoption of a rule which will enable an unwilling tax-payer to escape his proportion of the public burthens.

The requests above referred to, which were refused, were not embraced in any part of the charge as given, and were material to the defense; and the refusal to give them was calculated to prejudice the county. For that refusal, therefore, without considering other questions, there must be a new trial.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.