The Minnesota Stoneware Co. and others vs. McCrossen and another.

The MINNESOTA STONEWARE COMPANY and others, Appellants, vs. McCROSSEN and another, Respondents.

*April 10 — April 30, 1901.*

*Power of attorney to sell land not power to mortgage: Extending power by parol: Married women: Mortgages: Homesteads: Estoppel: Change of residence: Abandonment.*

1. A power of attorney "to sell and convey any real estate" of the grantor imports authority to sell out and out for cash, and does not include power to mortgage.
2. A power of attorney to sell and convey real estate cannot be extended or changed by subsequent oral authority so as to authorize the agent to mortgage the land.
3. The homestead right is not exclusively for the benefit of married women: it extends to the whole family, and prevents the doctrine of equitable estoppel from nullifying the statutory requisites to the alienability of a homestead.

The Minnesota Stoneware Co. and others vs. McCrossen and another.

4. A husband, acting under a power of attorney from his wife to sell and convey any lands in which she might have an interest, executed and delivered a mortgage on their homestead by signing the wife's name, in order to secure the payment of money borrowed for the benefit of the wife and which she actually accepted and used, she orally consenting thereto. *Held*, that the wife was not estopped to deny the validity of the mortgage.

5. Where the owner of a homestead testified that his moving with his family to a distant state, where he remained more than three years, was temporary and without intent to abandon his homestead, and the circumstance that the moving was for the sole purpose of benefiting his wife's health was established by his own evidence and that of other witnesses, the fact that while in the state to which he moved he voted at general and municipal elections is *held* insufficient to overcome a finding of fact by the trial court that such removal was for a temporary purpose without intent to abandon the homestead, but, on the contrary, with intent to reoccupy it as such.

APPEAL from a judgment of the circuit court for Marathon county: CHAS. M. WEBB, Judge. *Affirmed in part; reversed in part.*

Action by judgment creditors of *J. A. McCrossen* to reach real estate claimed by him as his homestead, *James McCrossen* being joined as mortgagee. The complaint was to the effect that the real estate described, located in the city of Wausau, Wisconsin, was *J. A. McCrossen's* homestead when the mortgage thereon, owned by *James McCrossen* and particularly described, was given; that such real estate subsequently ceased to be the homestead of the mortgagor, by reason whereof plaintiffs' judgments, which were particularly described, attached thereto as liens; that the mortgage was void because it was not signed by the mortgagor's wife.

The answer put in issue the allegations of the complaint as to the real estate ceasing to be a homestead and the mortgage not being signed by Mrs. McCrossen; and it was therein alleged that she, for the purpose of empowering her husband to borrow money on the homestead to invest in a

business for her, on February 12, 1894, gave to him a power of attorney in writing, authorizing him as follows: "In my name, place, and stead to sell and convey any real estate and personal property which I may now own or may hereafter acquire in the states of Wisconsin and Washington;" that under such authority, and at the express request of Mrs. McCrossen, her husband, defendant *J. A. McCrossen,* borrowed $2,500 of the Stuart Lumber Company and secured the payment thereof by the mortgage in controversy, all parties in the transaction, including Mrs. McCrossen, believing that the power of attorney was broad enough to authorize *Mr. McCrossen* to sign his wife's name to the instrument with the same force and effect as if she signed it by her own hand; that the money was actually invested in business for Mrs. McCrossen, and that the mortgage was thereafter, for value, assigned to defendant *James McCrossen.*

The facts stated in a general way were set up in the answer as a counterclaim, and affirmative relief was prayed for. The court found the facts requisite to plaintiffs' right to challenge the validity of the mortgage and of *J. A. McCrossen's* right to hold the realty as a homestead, and decided that such right existed when the mortgage was executed; that it was executed substantially under the circumstances stated in the answer and for the purpose therein alleged, i. e., to obtain money with which to start a business in the name of and for the benefit of Mrs. McCrossen; that such purpose was fully carried out; that before the commencement of the action *James McCrossen* became the owner of the note and mortgage; that on May 1, 1894, *J. A. McCrossen,* with his wife and family, temporarily removed from the homestead to engage in business and live in the state of Washington, Mrs. McCrossen disposing of her business in Wausau in order to use the proceeds in the new venture; that the temporary removal was for the benefit of Mrs. McCrossen's health; that the McCrossens did not, at the time of such removal or at

The Minnesota Stoneware Co. and others vs. McCrossen and another.

any time thereafter, intend to abandon their Wausau homestead, but on the contrary that they proposed at all times to return and occupy it, the particular time being uncertain till after the death of Mrs. McCrossen; that she died at Everett in the state of Washington in April, 1895, when and where she had an interest in a store in which her husband was a clerk; that after her death he ceased to work in the store, but did not withdraw the interest of his wife's estate therein; that he attended to some business in the state of Washington subsequent to his wife's death, including the operation for a few months of a small shingle mill, and that in the fall of 1897 he returned to Wausau to reside, leaving his children at Everett till the close of the term of school, when they also returned to Wausau to reside with their father; that the homestead was not occupied by him after such return and before the trial because he had not perfected his arrangements to commence housekeeping; that his purpose was to reoccupy the homestead with his family at the expiration of an existing lease thereof; that he did not acquire a homestead while in the state of Washington, but that he voted in such state three times, once at a national election and twice at municipal elections.

On such facts the court decided that at the time of the rendition of the plaintiffs' judgments the realty was, and up to the time of the trial continued to be, the homestead of *J. A. McCrossen;* that such judgments never became a lien thereon; that the mortgage was valid as to the parties thereto, including Mrs. McCrossen, and as to the creditors of *J. A. McCrossen;* that the latter was entitled to a judgment dismissing the action with costs, and that *James McCrossen* was entitled to a like judgment for costs and a judgment establishing the validity of the mortgage against *J. A. McCrossen* and plaintiffs. Judgment was rendered accordingly.

For the appellants there was a brief by *Brown, Pradt & Genrich,* and oral argument by *Neal Brown.*

The Minnesota Stoneware Co. and others vs. McCrossen and another.

For the respondents there were briefs by *Ryan, Hurley & Jones*, and oral argument by *M. A. Hurley*.

MARSHALL, J.   The question of the validity of the mortgage involves three questions: (1) Can the homestead of a married man be alienated without the signature of his wife being affixed to the instrument of conveyance by her own hand with intent to cause such alienation? (2) Does a power to sell and convey real estate include power to mortgage the same? (3) Does a conveyance of the homestead of a married man, executed by him, with the wife's signature affixed thereto by her verbal request, for the purpose of obtaining money for her use, together with a full execution of such purpose, operate by estoppel to alienate such homestead?

As we view the last two propositions the first need not be considered.   If the power of attorney to sell and convey did not authorize the act of *J. A. McCrossen* in signing his wife's name to the mortgage, and the circumstances under which the transaction occurred are not sufficient to render such signing equivalent to the personal signature of Mrs. McCrossen by estoppel, it is immaterial whether such personal signature was necessary or not.

The power of attorney was a mere power to sell and convey, importing authority to sell out and out for cash and not power to mortgage.   That is elementary.   Jones, Mortgages, § 129; Devlin, Deeds, § 363a; *Morris v. Watson*, 15 Minn. 212; *Colesbury v. Dart*, 61 Ga. 620; *Wood v. Goodridge*, 6 Cush. 117; *Hoyt v. Jaques*, 129 Mass. 286; Perry, Trusts, § 768.   No departure from such general rule, worthy of consideration, we venture to say, can be found.   There is a contrary line of decisions in the state of Pennsylvania, commencing with *Lancaster v. Dolan*, 1 Rawle, 231, decided in 1829, and based on an overruled English case.   The initial decision, though recognized as wrong tested by the generally accepted doctrine on the subject, was followed

The Minnesota Stoneware Co. and others vs. McCrossen and another.

in that state until, as we understand by what is said in *Zane v. Kennedy*, 73 Pa. St. 182, it was deemed too firmly ingrafted upon the judicial system of the state as a rule of property to be dislodged. Nevertheless, in a recent case, *Campbell v. Foster H. Asso.* 163 Pa. St. 609, decided in 1894, it was so evident to the court that the doctrine in *Lancaster v. Dolan*, as it had been considered, was so out of harmony with the rule prevailing elsewhere, that it was practically overruled by confining it to the precise situation before the court when it was decided,— that of a power coupled with an interest. This language was used:

"It cannot be questioned but that a mere naked power to sell and convey does not include a power to mortgage."

The Massachusetts court, speaking on the subject in *Hoyt v. Jaques, supra*, said:

"In the ordinary case of a power 'to sell and convey' land, given by a principal to his attorney, it is clear that the attorney would not be authorized to mortgage the land. The two transactions of a sale and a mortgage are essentially different."

The learned counsel for respondents favor us with an interesting and very full discussion of the subject of judicial construction of powers of attorney, covering the whole field thereof, including that of practical construction, but we are unable to see how any rule on the subject has anything to do with this case. No principle is better understood than that a written instrument, not ambiguous either in its literal sense or in the application of its language to the subject or purpose thereof, must be taken to mean what it says, reading it in the sense in which its words would be ordinarily understood, and that where an ambiguity is raised by applying the language of an instrument as before indicated, it cannot be solved by resorting to a meaning not within the reasonable scope of such language. In other words, language cannot be judicially extended beyond its reasonable scope in order to effect the intent of parties, however obvi-

ous that intent may appear; for the purpose of all rules
for judicial construction is to get sense out of words, not to
put sense into them.   The rule for practical construction is
no exception to that.   *Travelers' Ins. Co. v. Fricke*, 94 Wis.
258.   There is no ambiguity in the language of the power
of attorney in question.   It is the plainest kind of a mere
grant of authority to sell and convey real estate, and the
court is powerless to make it anything else by any legiti-
mate exercise of judicial power.

The idea is advanced that written authority to an agent
may be extended by subsequent oral authority.   That is so
in many cases, but not where the authority is required by
law to be in writing.   A power to sell and convey real
estate can no more be extended or changed by parol than
can a conveyance of real estate.   That is so elementary
that the suggestion of respondents' counsel to the contrary
does not require further notice.

It is claimed that Mrs. McCrossen was bound by estoppel;
that she was powerless to accept the benefit of the money
obtained by the mortgage given by her consent, and then
successfully raise the question of want of authority to sign
her name to the instrument under the general power of at-
torney or the verbal request.   That point is ruled against
respondents by *Cumps v. Kiyo*, 104 Wis. 656.   It was there
held that the protection which the law of this state throws
around the homestead right is not exclusively for the benefit
of married women,— that it extends to the whole family,
rendering the homestead inalienable otherwise than in the
precise manner indicated in the statute.   It was there said
that the doctrine declared does not go so far as to prevent
a married woman from being bound by estoppel on the spe-
cific question of whether a particular piece of property is or
is not a homestead, or that a paper signed by her purport-
ing to convey the homestead was so intended, but does pre-
vent the doctrine of equitable estoppel from nullifying the

statutory requisites to the alienability of a homestead. The subject there received very careful consideration. The conclusion arrived at is in harmony with the plain intent of the statute, with previous declarations of this court on the subject, and authorities elsewhere. No reason is perceived why the subject should be reconsidered.

There is left the question of fact, upon which the case mainly turned, as to whether the removal of *Mr. McCrossen* from the homestead was for temporary purposes, with intent not to abandon it as a homestead but to reoccupy it as such, as found by the court. We shall not discuss at length the evidence upon which such finding was made. The trial judge saw the witnesses. He heard the testimony. His opportunity for discovering the truth from what was said and all the circumstances disclosed, as has often been said, was far superior to that possessed here. The presumption is that he reached a correct conclusion, and that presumption is so strong that it cannot yield so easily as to be disturbed by a conclusion here, from reading the evidence, that it preponderates, merely, against the decision. That rule has been very, but not too, often declared. The force of it seems to be so frequently misconceived that reiterations thereof, in language calculated to give it that significance which it really has in our system, seem proper. When it is comprehended that the decision of a trial judge on a question of fact must stand as a verity unless shown to be clearly wrong by a decided preponderance of evidence against it, outweighing the contrary evidence and the presumed advantages which he may legitimately have had in discovering the truth that do not appear in the record, one will take in the full scope of the effect of such decision and appreciate the great power which the trial judge exercises in such matters. It is a power but little less than that exercised by a jury in deciding questions of fact. The proper exercise of it calls for the most careful scrutiny of the evi-

The Minnesota Stoneware Co. and others vs. McCrossen and another.

dence to the end that right may prevail over wrong so far as practicable. The most weighty responsibility incident to the judicial office in trial courts, in civil matters, is that involved in the proper determination of questions of fact upon evidence, because, unlike a wrong decision on a question of law, one on a question of fact may be safe against challenge in an appellate court because of the presumed superiority of opportunity of the former over the latter, which may not, probably does not, in all cases, exist, for separating the right from the wrong.

In this case there is the very significant circumstance that *Mr. McCrossen* exercised the elective franchise in the state of Washington three times while residing there. We must presume that the essentials of citizenship are the same in that state as here, and that *McCrossen's* assertion of the right of citizenship, as indicated, was inconsistent with his possessing a homestead in the state of Wisconsin. But we cannot say that such circumstance is conclusive. He violated the law in voting, or he committed perjury in testifying that his residence in the state of Washington was for mere temporary purposes and that his intention at all times was to return to the Wisconsin homestead. The trial court concluded from all the circumstances that he testified to the truth. It seems, looking at the record alone, that there is room for a different conclusion. But there are many cases in the books where it has been held that the mere act of voting at a particular place is not conclusive on the question of residence. Many well-considered cases of that kind are cited to our attention in the brief of counsel for respondents. *Robinson v. Charleton,* 104 Iowa, 296; *Dennis v. Omaha Nat. Bank,* 19 Neb. 675; *Mallard v. First Nat. Bank,* 40 Neb. 784; *Corey v. Schuster,* 44 Neb. 269; *Campbell v. Potter* (Ky.), 29 S. W. Rep. 139. In the last case cited the Kentucky court said:

"This court has held that the homestead right is never forfeited when there has been an occupancy and then a temporary removal with the intent to return and make the

The Minnesota Stoneware Co. and others vs. McCrossen and another.

premises a home. Appellants endeavored to show that the appellee abandoned all purpose to return to the property and that his residence had been permanently located elsewhere by proving that he registered and voted in wards in Bowling Green other than the one in which his home was situated. The proof shows that he did this. This act is not conclusive of the question, but is merely a fact, in connection with the other facts proven, to aid the court in determining whether the removal of the appellee from the premises was permanent or temporary The court holds that the act of registration and voting are not sufficient to overcome the weight of the testimony which conduces to prove that the removal was temporary."

Courts generally, that have spoken on the subject, reason in the same vein. In this case the circumstance of voting in the foreign jurisdiction was rebutted by the positive evidence of *Mr. McCrossen* of his purpose in going to the state of Washington and his intention at all times to return, and the circumstance, established by his evidence and that of other witnesses, that the removal to Washington was for the sole purpose of benefiting Mrs. McCrossen's health. In view of all the evidence in the record, and the weight, as above indicated, to be given to the decision of the trial judge, we cannot say that such decision is against the clear preponderance of the evidence. Therefore it cannot be disturbed.

*By the Court.*— The judgment rendered in favor of defendants for costs, establishing the homestead right of *J. A. McCrossen*, is affirmed. The judgment establishing the validity of the mortgage is reversed. No costs in this court will be allowed in favor of either party to the appeal, except the appellants shall pay the clerk's fees. The cause is remanded with directions to modify the judgment entered so that it will decree the invalidity of the mortgage in accordance with this opinion.

BARDEEN, J., took no part.