WILL OF HEYMANN: HEYMANN, Appellant, vs. LUCH-
SINGER, Public Administrator, Respondent.

*April 6—May 11, 1926.*

*Domicile: Presumption: Change: Evidence: Relevancy: Declara-
tions: Right to change domicile to escape taxation: Findings
of fact of trial court: Weight on appeal.*

1. The domicile of a person is his legal home, and every person
   has a domicile which may be his then residence or other-
   wise, depending on all the circumstances.  A domicile once
   established is presumed to continue until a new one has been
   effectuated.  p. 99.
2. One may change his domicile for any reason or for no reason;
   but whether he changes it or not will depend upon intent and
   actual change of residence.  p. 99.
3. In determining the questions of intention and actual change of
   residence necessary for a change of domicile, the declara-
   tions of the party before, at, and after the time of change
   are admissible, as well as all the facts and circumstances
   gained with such change of domicile.  p. 100.
4. On a disputed question of fact the supreme court will follow
   the findings of the trial court unless the decided preponder-
   ance of the evidence is to the contrary, or unless the trial
   court has not applied correct rules of law in the reception
   of evidence.  p. 103.
5. The evidence in this case is *held* to justify findings that
   decedent, after fifty years' residence in Wisconsin, went to
   Florida, not with the *bona fide* intention of acquiring a
   domicile there, but to escape taxation in Wisconsin, and
   that he never intended to make Florida his home and never
   acquired a domicile therein.  p. 104.
6. While one has the legal right to change his domicile to escape
   taxation, the courts will scrutinize the evidence as to a
   change to see whether it is actual and *bona fide* or fictitious.
   p. 104.
7. The right of a person to change his residence at will and for
   no other purpose than to escape taxation in Wisconsin is not
   denied, and such right, by implication, allows him to make
   declarations to constitute evidence as to the change.  p. 104.

APPEAL from an order of the county court of Winnebago
county: D. E. McDONALD, Judge.  *Affirmed.*

This is an appeal from an order entered on the 29th day of December, 1925, denying the petition of *Seymour B. Heymann* for letters ancillary in the estate of Siemon Heymann, deceased.

*Seymour B. Heymann,* of Oshkosh, presented a petition to the county court alleging that Siemon Heymann, a resident of the county of Lee, Florida, died testate about the 31st of May, 1925; that he presented therewith an authenticated copy of the last will of the deceased and of the record admitting the same to probate on the 15th day of June, 1925, in the county court of Lee county, Florida; that the petitioner was the person appointed in and by said last will as executor thereof; that the estate in Wisconsin was of the probable value of $170,000 in personal property and $500 in real estate; that the indebtedness of the deceased was probably $10,000; that the petitioner, *Seymour B. Heymann,* Oshkosh; Grace Levy, daughter, New York City; Rose Mergentheim, daughter, Winnetka, Illinois; and Edna Heymann, daughter, Chicago, Illinois, were the next of kin and heirs at law of the deceased, and praying that the exemplified copy of the will be admitted to probate as the last will and testament of the deceased, and that letters testamentary be issued to said *Seymour B. Heymann.*

*S. J. Luchsinger,* public administrator of Winnebago county, made answer to the petition, denying that Siemon Heymann was at the time of his death a resident of Florida, but, on the contrary, alleging that the deceased, at the time of his death, was a resident of the city of Oshkosh, Winnebago county, Wisconsin; alleging that the value of the deceased's property in Wisconsin was more than $450,000, and praying that the court enter an order determining that said Siemon Heymann, deceased, was at the time of his death a resident of the city of Oshkosh, and that the legal representative of the estate be required to account to the county court of Winnebago county for the personal prop-

erty and real estate owned by the deceased at the time of his death; and that general administration of said estate be granted to the executor named in the will or to such proper person or persons as the court might determine, to the end that the lawful inheritance tax due to the county and state may be determined.

The matter came on for hearing, and thereafter, on the 29th day of December, 1925, the court entered an order "that the petition of *Seymour B. Heymann* herein for letters ancillary in said estate be and the same is hereby denied." From this order the petitioner appealed.

For the appellant there was a brief by *William Kaumheimer* of Milwaukee, attorney, and *Morton A. Mergentheim* of Chicago and *Leon E. Kaumheimer* of Milwaukee, of counsel, and oral argument by *Mr. William Kaumheimer* and *Mr. Mergentheim.*

For the respondent there was a brief by the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr. Bump.*

CROWNHART, J. The contest in this proceeding involves the domicile of the deceased at the time of his death.

The law of domicile is well settled. Generally speaking, it may be said that the domicile of a person is his legal home, and that every person has a domicile which may be his then residence or otherwise, depending upon all the facts and circumstances. A domicile, once established, is presumed to continue until a new domicile has been effectuated. Every person has a domicile, and the "man without a country" exists only in fiction, not in law. One may change his domicile for any reason or for no reason. He may expatriate himself from the home where he has long lived and grown old, where he has prospered and gained affluence, where his friends and relatives reside, to become a hermit in a strange country. But whether he changes his domicile

or not will depend upon intent and actual change of residence. As to these questions of fact the usual rules of evidence apply. The declarations of the party before, at, and after the time of change of domicile are admissible, as .well as all the facts and circumstances gained with such change of domicile. 9 Ruling Case Law, title "Domicile;" 19 Corp. Jur., *ibid.; Hall v. Hall,* 25 Wis. 600; *Carter v. Sommermeyer,* 27 Wis. 665; *Kellogg v. Winnebago County,* 42 Wis. 97; *Kempster v. Milwaukee,* 97 Wis. 343, 72 N. W. 743; *Frame v. Thormann,* 102 Wis. 653, 79 N. W. 39; *Guardianship of Figi,* 181 Wis. 136, 194 N. W. 41; *Will of Eaton,* 186 Wis. 124, 202 N. W. 309; *Minnesota S. Co. v. McCrossen,* 110 Wis. 316, 85 N. W. 1019.

Applying these principles to the present case, we are called upon to consider the facts as developed by the evidence. Siemon Heymann, prior to December, 1924, had been a resident of Oshkosh, Wisconsin, with a continuous established domicile therein for about fifty years. Until 1923 he had been a merchant in Oshkosh and had acquired during that time large property interests. He had been married, and the issue of such marriage were the four children named in the petition as heirs and legatees. He was divorced and for some time prior to December, 1924, he had lived in his residence in Oshkosh as a single man, with a housekeeper who looked after his household affairs. A year or two prior to that time the housekeeper had left him, and a woman resident of Oshkosh came once or twice a week and cared for his house. In 1923 he sold out his mercantile business and thereafter, until he left Oshkosh, was engaged in looking after his investments..

It appears that Heymann had some controversy with the authorities in Wisconsin over his income tax and that he was disappointed in the results. On the 14th of November, 1924, the deceased and his son, *Seymour B. Heymann,* com-

posed and mailed the following letter to the assessor of incomes, at the court house in the city of Oshkosh:

"Dear Sir: I take this means of advising you that it is my intention to discontinue using my residence at 244 Wisconsin Ave., Oshkosh, Wisc., as my homestead, and to immediately establish my residence in Florida.

"I hereby waive the $500 homestead exemption for which I filed an affidavit, and you will kindly cancel such exemption.

"Please acknowledge, using inclosed envelope.
                   "Very truly,          S. Heymann."

This letter was written by the son, but it was in fact the joint epistle of father and son. It is significant in connection with what followed.

On the 18th of November the deceased left Oshkosh for Florida. On his way he visited with his daughter Edna in Chicago, and with his daughter Grace in Winnetka. On December 16th he registered at the Franklin Arms Hotel at Fort Myers, Florida, as follows: "S. Heyman, Milwaukee," and was assigned to room 604. This registration was made by the hotel clerk upon information furnished by Heymann. Heymann remained at this hotel, occupying the same room, for some time, probably six weeks or more. On December 31, 1924, he registered at the same hotel in his own handwriting as "S. Heymann, Fort Myers, Fla." The re-registration of December 31st is not explained, except by the inference that he desired to have evidence of a change of residence to Fort Myers, Florida, by such registration. Prior to leaving for Florida the deceased had packed his furniture in the attic of his house and in his garage, and had placed his homestead in the hands of a broker for sale. He was the owner of a lot in Oshkosh, which he also placed with a broker for sale. The broker made a sale of the homestead in Oshkosh, and prepared and forwarded to the deceased a contract of sale to be signed. In that contract it

was recited that the agreement was by and between "Siemon Heymann, a single man, of Oshkosh, Wisconsin," and the purchasers. This contract was signed by the deceased on the 22d day of December, 1924, and returned to the broker.

The Franklin Arms Hotel at Fort Myers, Florida, was not a family hotel, but, on the contrary, was a hotel for transients. No families lived in the hotel, and no one seems to have established his residence therein. It appears that the deceased did not make any arrangement for any definite stay at the hotel. He merely registered as a transient. The deceased stayed at the hotel six or eight weeks, whether continuously or not is not shown. He left the hotel at Fort Myers in February and never returned thereto. During his stay in Florida he traveled about the state, stopping at Tampa, Jacksonville, Sanford, Orlando, St. Petersburg, and probably other places. He left Tampa, Florida, for Hot Springs, Arkansas, where he was treated for malarial fever which he had acquired in Florida. He was at Hot Springs a week or so, and then traveled by easy stages back to Oshkosh, visiting his two daughters on the way. He arrived in Oshkosh about the middle of April and went directly to the home of his son, *Seymour,* where he remained, a sick man, until the day of his death on May 31, 1925.

These are the physical facts. There were introduced statements by the deceased to friends, neighbors, and others as indicating his intentions. Various inferences may be drawn from these statements. Some of them were clearly self-serving and point unerringly to the fact that he was seeking to escape the taxing laws of Wisconsin, and that his pretended residence in Florida was a mere makeshift; others indicate that he went to Florida to participate in the boom that was then on in that state; others indicate his *bona fide* intention of making Florida his future home. He made some investments in Florida while there, but there is not a

single fact or circumstance in the evidence that is not consistent with his continuing his domicile in Oshkosh. The deceased was seventy years of age. His old friends and neighbors were at Oshkosh. He had never lived in Florida, and none of his relatives or close associates lived there. His only son, who was married and had a boy seven or eight years of age, lived in Oshkosh, and the deceased and his son and his son's family were on intimate and friendly terms. He was particularly fond of his little grandson. When deceased left Oshkosh for Florida he took no furniture with him. He had an automobile, which he left behind. He had a large amount of securities in a bank at Oshkosh, which he left there.

As a citizen of Florida the deceased would be required to make a return of his real and personal property on or before April 1st in each year to the taxing authorities for the purpose of taxation. He did not do this. When deceased left Fort Myers to return to Oshkosh he left no property there of any description, no address, no word of any intention to return, and although he had at one time registered at the hotel as from Fort Myers, he bought no property there, and all of his investments in Florida real estate, whatever they were, were made elsewhere. None of his relatives visited him while he was in Florida.

The county court found that the deceased was a resident of Oshkosh, Winnebago county, Wisconsin, at the time of his death. Upon a disputed question of fact this court will follow the findings of the trial court unless the decided preponderance of the evidence is to the contrary, or unless the trial court has not applied correct rules of law in the reception of evidence. *Endress v. Shove*, 110 Wis. 141, 85 N. W. 651; *Minnesota S. Co. v. McCrossen*, 110 Wis. 316, 85 N. W. 1019; *Truelsch v. Miller*, 186 Wis. 239, 202 N. W. 352.

It seems that the evidence fully justifies the findings of the trial court.   That court was at liberty to find that the deceased went to Florida not with a *bona fide* intention of acquiring a domicile there, but for the purpose of escaping taxation in Wisconsin; that the declarations he made prior to leaving, and his registration at the hotel on the 31st of December, were for the purpose of establishing evidence upon which to sustain a residence in Florida, but that deceased never really intended to make Florida his home and never acquired a domicile therein.

While the deceased had a legal right to change his domicile for the purpose of escaping taxation, the courts will scrutinize the evidence of change closely to see whether the change was actual and *bona fide* or fictitious.  As was said in *Kellogg v. Winnebago County,* 42 Wis. 97, 107:

"Abandonment of Oshkosh with the intention of taking up his residence in Chicago, and even the removal of his property therefrom, is not sufficient, so long as he did not actually acquire a new residence or domicile there.   This is a just, wise rule, founded in reason and supported by authority.   Every person should contribute his fair share towards the maintenance of the government which protects him and whose benefits he enjoys.   Neither justice nor equity requires the adoption of a rule which will enable an unwilling taxpayer to escape his proportion of the public burthens."

In what we have said we do not wish to be understood as denying the right of the deceased to freely change his residence at will and for no other reason than to escape taxation in Wisconsin, and the right to choose another residence implies the right to declare his choice even for the sole purpose of making evidence to prove what his choice was.

"Such declarations are not self-serving in an improper sense, unless they are made with intent to deceive.   If they are false and made for a sinister purpose, they will meet

the fate that falsehood always meets in courts of justice when discovered by the triers of fact." *Matter of New-comb,* 192 N. Y. 238, 252, 84 N. E. 950.

*By the Court.*—The order of the county court is affirmed.