DOERN, Plaintiff and Respondent, v. CRAWFORD and others, Defendants: AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant and Appellant.

*October 4—October 31, 1967.*

472

For the appellant there were briefs and oral argument by *John W. Emmerling* of Milwaukee.

For the respondent there was a brief by *Johnson & Johnson* and *Kenneth L. Johnson*, all of Waukesha, and oral argument by *Kenneth L. Johnson*.

CURRIE, C. J.   This appeal presents these three issues:

(1) Was there sufficient credible evidence to support the jury's finding that, as of November 11, 1962, Paulson intended to return to the household of his wife and stepson?

(2) Was the testimony of Crawford and Engle, Paulson's attorney, in regard to Paulson's statements concerning his intent whether or not to return to his residence inadmissible hearsay?

(3) Did the trial court's refusal to give certain instructions requested by appellant constitute reversible error?

*Sufficiency of the Evidence.*

Inasmuch as Paulson was not residing under the same family roof with his wife and stepson at the time the accident occurred on November 11, 1962, the crucial question is whether he then possessed an intent to return to such household. On the prior appeal we stated:

". . . the controlling test of whether persons are members of a household at a particular time is not solely whether they are then residing together under one roof. Living together under one roof is a factor to be considered and must have occurred at some time. When not occurring at the time in question, the absence from the family roof must be of a temporary nature with intent on the part of the absent person to return thereto. There is a close analogy between the concepts of household and domicile because intent of the person involved plays such a significant part.. The one material difference between the two is that a domicile once acquired is not lost when a person leaves it, even though intending never to return, until he establishes a domicile elsewhere. We determine that this is not true with respect to a household, and, therefore, *physical absence coupled with intent not to return is sufficient to sever the absent person's membership in the household.* Every person has a domicile but not every person is a member of a household." (Emphasis supplied.) [3]

During the trial Paulson testified as follows: He had told his attorney, Engle, that although he wanted to commence a divorce action, his sole purpose therein was to "shock" his wife into "straightening out" as to her attentions to other men. Paulson did not leave his home, until he was ordered to do so on November 5, 1962, pursuant to an order served upon him by the Waukesha

[3] *Id.* at page 213.

sheriff's department. He had taken only his shaving equipment and some clothes with him and returned later to pick up some more clothes. He took merely a sleeping room (bed and dresser) at the hotel. He returned home on two different occasions between November 5th to 11th, at his wife's request, to perform household repairs. He did not change his address and picked up his mail at his home. Furthermore, he supported his family financially during this period.

Particularly significant on the issue of Paulson's intent are these excerpts from his testimony:

"*Q.* Mr. Paulson, did you on November 11, 1962, have an intent to return to your wife and family at 1007 Brookfield Avenue, Waukesha, Wisconsin? *A.* Well, I intended to return all that time if I could."

"I always had hopes to return home."

". . . I wanted to start the action, but I hoped it never went through all the way."

". . . she asked me when I was going to give it up and come home. I told her when she decided to straighten out I would."

"*Q.* Is it not a fact that as part of that agreement you wanted her to give you assurance she would stay home with you? *A.* Yes, I guess that would be about it."

"*Q.* Isn't it a fact, Mr. Paulson, it was not until December 9, 1962, that your wife satisfied you she was going to straighten out? *A.* That is when we came to an agreement."

"I don't know exactly how to put it, but my intentions all the way was to go back together, that is when we made our final agreement."

"*Q.* Your intention all the way was to go back together if she did something, right? *A.* The minute we could work things out, I was ready to go back."

Paulson's attorney Engle and the stepson Crawford also testified to conversations had with Paulson bearing

on his intent. These are hereinafter quoted in connection with the question of their admissibility. However, the nature of these statements are such that they are cumulative to Paulson's testimony at trial with respect to his intent.

Appellant contends that when Paulson commenced the divorce action and left the home he did so with the absolute intent of never returning, unless Mrs. Paulson promised to "straighten out" and not associate with other men. Therefore, it is urged that, inamuch as on the day of the accident such a promise had not been exacted which was a condition precedent to his return, there existed no intent on Paulson's part on that day to return. While this was an inference which the jury could have reasonably drawn from the testimony, it is not the only inference which the evidence will support. An equally tenable inference is that up to the date of the accident Paulson entertained the hope and belief that he would be able to return to the home upon the terms he had specified, and that he had not formed the absolute intent not to return in the event Mrs. Paulson should eventually fail to comply with such terms. This latter inference would support the jury's finding that as of the date of the accident he did intend to return home.

Where there is any credible evidence which, under any reasonable view, fairly admits of an inference that supports the jury's finding, neither the trial court nor this court should change such finding.[4]

We find no merit to appellant's claim that there is insufficient credible evidence to support the verdict.

*Admissibility of Statements of Intent.*

During the trial Crawford testified that his stepfather Paulson had stated to him in a conversation that he did

---

[4] *Rodenkirch v. Johnson* (1960), 9 Wis. 2d 245, 248, 101 N. W. 2d 83.

not like the idea of being apart from his wife and also had asked Crawford "if mother was willing to let him come back home."

Attorney Engle testified that Paulson had told him that he was commencing the action "to shake her up so she would fly right. . . ." He further testified that Paulson had told him that "he didn't really want a divorce," and that he would dismiss the action after he had accomplished the purpose of "shaking up" his wife. (Paulson waived the attorney-client privilege.)

Appellant contends that this testimony by Crawford and Engle constituted inadmissible hearsay, and the trial court committed prejudicial error by failing to sustain appellant's objections thereto.

As pointed out in the above-quoted excerpt from our opinion on the first appeal "[t]here is a close analogy between the concepts of household and domicile because intent of the person involved plays such a significant part." [5] In *Will of Heymann* [6] this court stated:

". . . The declarations of the party before, at, and after the time of change of domicile are admissible, as well as all the facts and circumstances gained with such change of domicile. . . ." [7]

Wigmore has stated:

"That *declarations of intent as to residence* are in general admissible is nowhere questioned . . . ." [8]

In *Bridges v. State* [9] this court quoted with approval from American Jurisprudence as follows:

---

[5] Footnote 2, *supra*, and accompanying text.

[6] (1926), 190 Wis. 97, 208 N. W. 913.

[7] *Id.* at page 100.

[8] Wigmore, *Evidence* (3d ed.), p. 89, sec. 1727. *See also* 25 Am. Jur. 2d, *Domicil*, p. 63, sec. 89; 28 C. J. S., *Domicile*, p. 43, sec. 18 (b) (1); Morgan, *Basic Problems of Evidence* (A. L. I. 1962), p. 333.

[9] (1945), 247 Wis. 350, 365, 366, 19 N. W. 2d 529, 19 N. W. 2d 862.

" '. . . There is no question that where a particular state of mind of a person is a relevant fact, declarations which indicate its existence are admissible as primary evidence, notwithstanding the declarant is available as a witness.' [10]

" 'Assuming that the state of mind of a person at a particular time is relevant, his declarations made at that time are admissible as proof on that issue, notwithstanding they were not made in the presence of the adverse party. It is clear that when evidence of the declarations of a person is introduced solely for the purpose of showing what the state of mind or intention of that person was at the time the declarations were made, the declarations are regarded as acts from which the state of mind or intention may be inferred in the same manner as from the appearance of the person, or his behavior, or his actions generally.' . . ." [11]

In view of these authorities the trial court properly overruled appellant's objections to the testimony of Crawford and Engle.

### Instructions to the Jury.

Appellant contends that the trial court's refusal to give two instructions requested by it constituted reversible error. The first requested instruction provided:

"You are to determine Meryl L. Paulson's intent as it existed on November 11, 1962, and not as of any earlier or later date. If you find that his intent changed at some time after November 11, 1962, you should ignore that change and determine what his intent was on November 11, 1962."

The trial court's corresponding instruction provided:

"The question to be submitted to you in the special verdict reads as follows: As of November 11, 1962, did Meryl Paulson have the intent to return to the household at 1007 Brookfield Avenue? . . .

---

[10] 20 Am. Jur., *Evidence*, p. 404, sec. 457.

[11] 20 Am. Jur., *Evidence*, p. 491, sec. 585.

". . .

"I would further instruct you that whether the absence from the household is of long or short duration is immaterial except as it may give rise to inferences of intent to remain away permanently or only temporarily. In the instant situation the fact that Mr. Paulson later discontinued the divorce action and returned to the household of his wife and stepson is not conclusive on the issue whether his absence therefrom at the time of the accident was intended by him to be permanent or temporary."

The second paragraph of the trial court's instruction is taken almost verbatim from our opinion on the first appeal.[12] The court therein indicated that the factor of the discontinuance of the divorce was relevant to his intent at the time of the accident and could be considered by the jury, although such later action was not conclusive as to his intent. Therefore, appellant's first instruction was properly refused.

The second requested instruction provides:

"If you find that Meryl L. Paulson did not intend to discontinue the divorce action and return to the household of his wife and stepson unless and until his wife did a certain thing, and if you find further that she did not do that thing until after November 11, 1962, then you must find that, as of November 11, 1962, the defendant Kenneth Crawford was not a resident of the same household with Meryl L. Paulson."

We have herein rather exhaustively considered the issue of Paulson's intent in resolving the issue of whether there was sufficient credible evidence to sustain the one question special verdict. The objection to this second requested instruction is that it ignores the possibility that, while Paulson may have stated that his intent was that set forth in the requested instruction, he may at the same time have been so hopeful that Mrs. Paulson would meet the condition he had imposed for his return,

[12] Footnote 2, *supra*, at page 214.

that he had not yet decided what he would ultimately do if this hope was not fulfilled. As previously recounted herein, there is testimony of other statements made by Paulson from which the jury could draw this latter inference. Therefore, unless this were explained to the jury so that they would know that they were not obligated to accept Paulson's testimony of intent with respect to not returning home until Mrs. Paulson had promised not to associate with other men as being his irrevocable decision, the giving of the requested instruction might mislead the jury. Accordingly we find no error in refusing this requested instruction.

*By the Court.*—Judgment affirmed.