FIRST NATIONAL BANK OF OMRO, Respondent, vs. BEAN, imp., Appellant.

*January 12—February 1, 1910.*

*Principal and agent: Power of attorney: Construction: Authority to make and indorse notes: Bona fide purchasers: Guaranty: Consideration: Payments: Ratification.*

1. Authority to make or indorse promissory notes, given in a power of attorney to "take the general control and management of the" principal's "affairs, business, and property" and to "do every act, matter, or thing which the nature of such business shall require," is limited to such notes only as are necessarily connected with the conduct and management of the business.

2. Where such a power of attorney is duly recorded, and the agent sells to a bank the note of a third person, appearing in no way to be connected with the business, property, or affairs of his principal, on which the principal's name purports to be personally indorsed, and deposits the proceeds of the note in the bank to his personal account, and later, purporting to act under the

power of attorney, signs his principal's name to a guaranty of the note, the officers of the bank are not justified in accepting the note or the guaranty as authorized by the power of attorney.

3. The contract of guaranty in such case, made apparently as an independent undertaking long after the making and negotiation of the note and prior to its maturity, and wholly without consideration as to the principal, is of no effect.

4. Payments by an agent on a note collateral to a prior note purporting to be indorsed by his principal is not a ratification of such indorsement, where neither the agent nor the principal had any knowledge of the existence of such prior note.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge.   *Reversed.*

On May 31, 1899, *Julia M. Bean* executed a power of attorney to Herbert L. Sweet, the essential parts of which are as follows:

"For me and in my name, place and stead, to take the general control and management of my affairs, business and property; to buy, sell, pledge, mortgage, execute and enter into bonds, contracts, conveyances and incumbrances in behalf of the same, and in general to do and perform all other acts and things which he may consider useful and necessary, connected with my said affairs, business, property and interests; to manage and transact all business, open all letters of correspondence, and to answer the same; to draw, accept, make, indorse and pay all bills of exchange and promissory notes; to receive and receipt for all moneys; to draw and sign all orders, checks and drafts for moneys on the cashier of the German National Bank, or any other bankers or persons where I shall deposit or keep money; to arrange, balance, and settle all books and accounts, and generally do every act, matter or thing which the nature of said business shall require; giving and granting hereby unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about said premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying all that my said attorney, or his substitute, shall lawfully do or cause to be done by virtue hereof."

This power of attorney was recorded June 12, 1899.   In

1901, while the power of attorney was in force, Herbert L. Sweet presented the following note to the plaintiff bank:

"$900.00.          Oshkosh, Wis., November 6th, 1901.

"Four months after date, for value received, we promise to pay to W. P. Wheeler, cash, or order, at the *First National Bank of Omro,* nine hundred dollars, with interest to be paid at the rate of six per cent. per annum, until paid.

"THE WINNEBAGO COUNTY AG'L & HORT'L ASS'N.
"John Athearn, Pres.     Herbert L. Sweet, Secretary.
"Due Mar. 6, '02."

On the back of the note were the following indorsements: "Herbert L. Sweet, *Julia M. Bean,* John Athearn, Helen M. Sweet." Helen M. Sweet was the wife of Herbert L. Sweet. The association never authorized the making of the note, nor did any of the persons whose names were signed to it or indorsed upon it, except Herbert L. Sweet, know that the note was made.    Herbert L. Sweet claims that the association was indebted to him for money advanced to pay debts of the association.    The $900 received from the bank on the note was deposited to the credit of Herbert L. Sweet and was checked out by him in his own affairs.    No one else received any consideration for the note or any of its proceeds.    In January, 1902, *Mrs. Bean* selected A. J. Barber to take charge and control of her affairs.    After the note was purchased by the bank additional security was demanded, and on February 24, 1902, Herbert L. Sweet made the following indorsement upon the note:

"For value received, we, or either of us, hereby guarantee the payment of the within note at maturity and waive protest, notice of protest and all defense on account of the extension of time of judgment by the holder or holders hereof.

"Dated this 24th day of Feb'y, 1902.

"HERBERT L. SWEET.
"JULIA M. BEAN.
"HELEN M. SWEET.
"By H. L. SWEET,
"Their Attorney in Fact."

On February 26, 1902, H. L. Sweet, as attorney for *Mrs. Bean,* executed a note for $900 and a mortgage upon real es-tate belonging to *Mrs. Bean* as additional security for the first note.   On March 6, 1902, the date when the first note became due, Herbert L. Sweet gave his individual note for $900, due in two months.   The note contains the following notation: "Collateral on dep. and fair note attached."   A revocation of Herbert L. Sweet's power of attorney was exe-cuted by *Mrs. Bean* on May 6, 1902, and was recorded on the same day.   On May 10, 1902, A. J. Barber, who had charge of *Mrs. Bean's* affairs, sent $100 to the plaintiff as a partial release of the mortgage executed February 26, 1902, and di-rected that it should be credited on the note.   This and other subsequent payments were credited by the bank on the first note.   Neither A. J. Barber nor *Mrs. Bean* knew of the ex-istence of the first note until the commencement of this suit, which is on the first note.

The court refused to admit evidence tending to show that during January, 1902, the officials of the bank knew that *Mrs. Bean's* business affairs were no longer being handled by Herbert L. Sweet, but were in charge of A. J. Barber.

This is an appeal from the judgment on the verdict directed by the court against Herbert L. Sweet and *Julia M. Bean.*

For the appellant there was a brief by *Hume & Oellerich,* and oral argument by *R. L. Clark.*

For the respondent there was a brief by *Barbers & Beg-linger,* and oral argument by *Fred Beglinger.*

SIEBECKER, J.   The trial court adjudged that *Mrs. Bean* was liable because the acts of Herbert L. Sweet were within the authority conferred by the power of attorney.   *Mrs. Bean* by the power of attorney grants Herbert L. Sweet power "to take the general control and management of [her] affairs, business and property," to perform all acts connected there-with, including the execution, indorsing, and paying of prom-issory notes, the receipting for and paying of money, and

"generally [to] do every act, matter or thing which the nature of said business shall require." The powers thus conferred are clearly defined by the context of the writing and confer authority to control and manage her affairs as her business and property may require. The authority to execute, indorse, and pay promissory notes is restricted to the scope of the general power conferred to do all acts required for the control and management of her affairs, business, and property. This power to execute and indorse notes should therefore not be extended to include authority to execute promissory notes for purposes not embraced within the execution of the powers conferred. The terms of the power include the authority to indorse only such promissory notes as are necessarily connected with the execution of these powers, and apply only to promissory notes which her business necessities demanded. The inquiries therefore are: Was the note in question made and executed to carry out the power conferred on Sweet for the control and management of *Mrs. Bean's* affairs, business, and property? and Had the bank officers, under the facts and circumstances of the negotiation of the note, the right to accept it as a note pertaining to the management of *Mrs. Bean's* affairs and as executed under the power of attorney? There is no dispute but that Herbert L. Sweet made and executed the note, and it clearly appears that it was not in fact connected with the management and control of *Mrs. Bean's* affairs, business, and property. The evidence relevant to this question permits of but the one inference that this note had in fact no connection with the administration of *Mrs. Bean's* property and business affairs.

It is averred by the respondent that the bank officers were not apprised of this fact when they negotiated for the note, and that they therefore had a right to assume that it was made and executed by Herbert L. Sweet under the power of attorney, and that it was necessarily connected with the affairs and business intrusted to his control and management. This

claim is negatived by the facts.   The power of attorney was properly recorded.   This afforded a convenient opportunity for the officers of the bank to ascertain the extent of the powers actually conferred by the power of attorney.   In the light of the facts of the transaction with the bank it cannot be said that the officers were warranted in concluding that the note was given by Herbert L. Sweet as attorney in fact for *Mrs. Bean.*   The face of the note shows that it was the note of the Winnebago County Agricultural & Horticultural Association. It purported to be executed by its president and secretary and to be personally indorsed by the president and secretary and by Mrs. Sweet and *Mrs. Bean.*   The note and the indorsements bear no evidence that the note was connected with the affairs, business, and property of *Mrs. Bean.*   Nor did it then bear any evidence that it had been executed by Herbert L. Sweet as attorney in fact.   Herbert L. Sweet deposited the proceeds of the note with the bank to the credit of his personal account.   Obviously this must have been known to the bank, and it accords with and corroborates the idea that the bank was apprised of the fact that Herbert L. Sweet had obtained the money on the note for his own use and benefit.   Taking these facts in connection with the restriction in the power of attorney, by which he was limited as such attorney in fact to the giving of such notes as were required for the conduct and management of *Mrs. Bean's* business affairs and property, and it clearly follows that the plaintiff has failed to show any grounds which justified it in accepting the note in question as one authorized by the power of attorney.

From these facts and circumstances it also follows that the alleged guaranty of February 24, 1902, was not binding upon *Mrs. Bean,* though it is in form executed by Herbert L. Sweet as such attorney in fact.   The bank was then informed that the note was not embraced within the authority of Herbert L. Sweet and that he was powerless to impose such a liability upon his principal in this manner.   Furthermore, this con-

tract of guaranty is an apparently independent undertaking of a date long subsequent to the making and negotiation of the note and before its maturity.   It is wholly without consideration as to *Mrs. Bean,* and the alleged guaranty is therefore of no effect.

In view of the fact that the powers of Herbert L. Sweet to make notes for *Mrs. Bean* were limited and restricted to cases where they were necessarily required for the conduct and management of her affairs, business, and property, and in view of the facts and circumstances established by the evidence, the case does not show that the note in question was one within the authority conferred on Herbert L. Sweet or that the bank had the right to deem it to be such a note.

It is contended that the payments made by A. J. Barber as *Mrs. Bean's* agent on the collateral note of February 26, 1902, are a ratification of the obligation of the original note.    When these payments were made, neither *Mrs. Bean* nor Mr. Barber had any knowledge of the alleged original obligation.    To make the acts of Mr. Barber efficacious as a ratification it must appear that he had authority to act in the matter for *Mrs. Bean* and that both he and *Mrs. Bean* had knowledge of the material facts.    The record shows that neither *Mrs. Bean* nor Mr. Barber knew that the note upon which the suit is brought was in existence.    This in itself is conclusive that he did not ratify it.

We are persuaded that the trial court erred in holding *Mrs. Bean* liable on the note.

*By the Court.*—Judgment reversed as to *Julia M. Bean,* and the cause remanded with directions to award judgment dismissing the complaint as to *Julia M. Bean.*