Heidi PRAEFKE, Plaintiff-Appellant,†

v.

AMERICAN ENTERPRISE LIFE INSURANCE Co. and Julie
Gray, Defendants-Respondents.

Court of Appeals

*No. 01–2916. Submitted on briefs June 7, 2002.—Decided
August 14, 2002.*

## 2002 WI App 235

(Also reported in 655 N.W.2d 456.)

† Petition to review denied 10-21-02-.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John P. Higgins* of *Guttormsen, Hartley, Guttormsen & Wilk, LLP*, of Kenosha.

On behalf of the defendant-respondent American Enterprise Life Insurance Co., the cause was submitted on the brief of *David E. Celebre* of Kenosha.

On behalf of the defendant-respondent Julie Gray, the cause was submitted on the brief of *Donal M. Demet* of *Demet & Demet, S.C.*, of Milwaukee.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. Heidi Praefke appeals from a grant of summary judgment in favor of American Enterprise Life Insurance Co. (American Enterprise) and Julie Gray. Praefke alleges that American Enterprise failed to act in good faith by refusing to disburse certain annuities to Praefke as the sole beneficiary. Gray and American Enterprise claim that Praefke became the sole beneficiary to these accounts and other funds as a result of unlawful self-dealing while acting as power of attorney for a mutual friend, Betty Glasslein. They assert that the power of attorney did not authorize Praefke to make gratuitous transfers of Glasslein's assets to herself or her family and that by doing so, Praefke breached the fiduciary duties she owed to Glasslein as attorney-in-fact. Praefke responds that she did not breach her fiduciary duty of loyalty because the power of attorney agreement grants her the authority to make gratuitous transfers to herself and others. Alternatively, Praefke argues that if the power of attorney agreement does not clearly grant such broad authority, she can prove by evidence extrinsic to the agreement that the gratuitous transfers were made in accordance with Glasslein's express oral wishes. Pursuant to *Alexopoulos v. Dakouras*, 48 Wis. 2d 32, 179 N.W.2d 836 (1970), we determine that Praefke lacked authority to make gifts to herself because the agreement did not contain express written authorization. Furthermore, because the power of attorney did not expressly authorize Praefke to make gifts to herself, extrinsic evidence of Glasslein's intent to allow such gifts is not admissible. We affirm the grant of summary judgment in favor of Gray and American Enterprise.

¶ 2. Praefke was Glasslein's attorney-in-fact under a durable power of attorney executed on April 26, 1996. Glasslein had been a friend of Praefke's mother, Irmgard Wiemer, since 1953. Approximately one year after Glasslein executed the power of attorney, she was diagnosed with an Alzheimer's type of dementia.

¶ 3. Following the diagnosis of dementia, Praefke as attorney-in-fact changed the payable on death beneficiary designations on most of Glasslein's assets to herself. On March 19, 1998, she executed a customer service request form to change the beneficiary designation on a $60,000 annuity contract naming herself the sole beneficiary. Prior to the change, Praefke was a co-beneficiary with Glasslein's former neighbor, Gray. On April 5, 1997, Praefke executed a customer service request form to change the beneficiary designation on a $75,000 annuity contract naming herself the sole beneficiary. Prior to the change, the proceeds were payable to Gray and another neighbor, Duane Paul. In addition, on May 1, 1997, Praefke as attorney-in-fact established a $50,000 insurance investment account with Putnam Investment Services. Praefke was named the sole beneficiary of the account. The source of the funds used to establish this account was a TCF Bank savings account that had belonged to Glasslein. Finally, Praefke made cash gifts out of Glasslein's checking account to herself ($10,000), Wiemer ($7500), Gray ($5000) and Gray's son ($2000).

¶ 4. After Glasslein's death on February 18, 2000, Praefke made claim to American Enterprise for the proceeds of the annuity accounts. After an investigation, American Enterprise refused to disburse the proceeds unless Praefke would: (1) obtain a waiver from Gray as the former beneficiary, or (2) provide a court order directing payment to her, or (3) consent to turn-

ing the claim over to the court as an interpleader. Praefke did not agree to this proposal.

¶ 5. Thereafter, Praefke brought suit against American Enterprise to collect under the annuities, naming Gray as a defendant. Gray counterclaimed seeking to undo the Putnam account and the gifts. The trial court granted summary judgment to Gray and American Enterprise on the basis that Praefke had violated her fiduciary duty of loyalty to Glasslein by engaging in self-dealing.

¶ 6. On appeal, Praefke asserts that the durable power of attorney's broad grant of authority includes the authority to make gifts to herself and others. In addition, she asserts a disputed factual issue exists as to whether Glasslein orally requested and authorized the self-dealing transactions engaged in by Praefke.

¶ 7. We review summary judgment determinations de novo, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (1999–2000).[1] The construction of a power of attorney presents a question of law that we review de novo. *See Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990).

¶ 8. As a preliminary matter, we observe that Glasslein executed this document at a time when her capacity to do so was unchallenged. Indeed, no one has questioned the adequacy of the document except to the

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

extent that it was used to make gifts and to self-deal. In addition, Praefke has stipulated that the instrument does not contain specific language that states the agent may make gifts or has gifting powers.

¶ 9. We begin our discussion with a review of the nature of the principal and attorney-in-fact relationship. It is a well-established tenet of agency law that an attorney-in-fact has a fiduciary obligation to the principal. *Alexopoulos*, 48 Wis. 2d at 40. The agent's duty is to act solely for the benefit of the principal in all matters connected with the agency, even at the expense of the agent's own interest. *Bank of Cal. v. Hoffmann*, 255 Wis. 165, 171, 38 N.W.2d 506 (1949). In addition, the powers of the attorney-in-fact are strictly construed and are interpreted to grant only those powers that are clearly delineated or specified. *See First Nat'l Bank of Omro v. Bean*, 141 Wis. 476, 480, 124 N.W. 656 (1910).

¶ 10. The outcome of this case is controlled by *Alexopoulos*, 48 Wis. 2d at 40–41. In that case, the attorney-in-fact was given a broad power to perform all acts that the donor of the power could perform. *Id.* at 35. The attorney-in-fact concluded that the power was tantamount to a gift because he had the same authority to dispose of assets that the principal had were he present. *Id.* at 40. The court rejected this "bizarre" argument based on the fiduciary nature of the relationship. *Id.* The court stated that unless the power of attorney specifically allows the agent to gift property to himself or herself, or contains an "unlimited or unbridled" gifting power, the agent lacks authority to make gratuitous transfers. *Id.* at 41. Simply stated, *Alexopoulos* stands for the proposition that in the principal-agent relationship, a general authority to deal

with assets is not sufficient to exculpate an attorney-in-fact from a charge of self-dealing. *See State v. Hartman*, 54 Wis. 2d 47, 56–57, 194 N.W.2d 653 (1972) (discussing *Alexopoulos*).

¶ 11. Praefke argues that *Alexopoulos* is inapplicable because in that case the claim was made by the estate on behalf of the deceased principal against the fiduciary. Here, Praefke notes that the counterclaim is by a third party, Gray, against the fiduciary. Praefke contends that she owes no fiduciary duty to Gray or any third parties. Instead, under *Alexopoulos*, the duty is owed only to the principal. Praefke reasons that Gray has failed to show that her actions harmed the principal.

¶ 12. Praefke misses the basic policy concern underlying *Alexopoulos* and related law that forbids self-dealing. That concern is not linked to any duty an agent may have to third parties, but is primarily addressed to the potential for fraud that exists when an agent acting pursuant to a durable power of attorney has the power to make gifts, especially after the principal becomes incapacitated. A fiduciary will not be allowed to feather his or her own nest unless the power of attorney specifically allows such conduct. In short, where the fiduciary argues that the power of attorney allowed for self-dealing, that power must be specifically authorized in the instrument.

¶ 13. We have also considered that *Alexopoulos* does state that self-dealing may be allowed where there is an "unlimited or unbridled power of disposition." *Alexopoulos*, 48 Wis. 2d at 41. Here, the power of attorney document did contain broad language in that it authorized Praefke "to do and perform everything for

the purpose of . . . managing, conveying . . . my property, real as well as personal . . . as fully as I could do and perform if personally present." However, we observe that the power of attorney in *Alexopoulos* had similar language and the supreme court still determined that the fiduciary had breached his duty. *Id.* at 40–41.[2] Therefore, we conclude that *Alexopoulos* governs this case.

¶ 14. Praefke next asserts that Glasslein made statements allegedly modifying the terms of the written agreement. She offered the trial court two affidavits in support of her position, one from Wiemer, her mother, and her own. The trial court excluded the Wiemer affidavit because Praefke had failed to include Wiemer as a witness pursuant to the scheduling order. Praefke does not seek review of this order and therefore we do not consider the Wiemer affidavit on appeal.

¶ 15. Thus, the only evidence left to consider is Praefke's own self-serving affidavit in which she alleges that Glasslein requested her as attorney-in-fact to make the beneficiary changes to the American Enterprise annuities.[3] In this affidavit, she also claims that

---

[2] The power of attorney in *Alexopoulos v. Dakouras*, 48 Wis. 2d 32, 40, 179 N.W.2d 836 (1970), authorized the agent to receive "for me and in my name, place and stead . . . all sums of money" owed to the principal and to "deal in any property" and "transact . . . business of what nature and kind soever." The supreme court refused to equate this broad power with an unrestricted power of disposition that would allow self-dealing. *Id.*

[3] American Enterprise and Gray argue that this affidavit, which also claims Glasslein was in full use of her mental faculties when she requested the change in beneficiaries, is contradicted by deposition testimony showing that all of the

the funds used to establish the Putnam investment account were certificates of deposit worth $50,000 previously purchased by Glasslein and payable on death to Praefke.

¶ 16. We have already established in this case the bright-line rule that an attorney-in-fact may not make a gift to himself or herself unless there is an explicit intent in writing from the principal allowing the gift. Relying on *Minnesota Stoneware Co. v. McCrossen*, 110 Wis. 316, 322, 85 N.W. 1019 (1901), Gray argues that extrinsic evidence of the principal's oral authorization to allow such gifts is inadmissible. *Minnesota Stoneware* involved an unauthorized conveyance of real estate under a simple power of attorney. *Id.* The supreme court held that "[a] power to sell and convey real estate can no more be extended or changed by parol than can a conveyance of real estate." *Id.* To the extent that the case before us involves an alleged oral amendment to a durable power of attorney authorizing the transfer of assets that are not real estate, a question of first impression presents itself.

¶ 17. We note that courts in other jurisdictions are divided on the question of whether they will accept evidence of oral authorization to make gifts when the

transactions took place after Glasslein became incapacitated and she could therefore not have authorized or thereafter ratified them. The trial court apparently agreed with American Enterprise and Gray, stating that "[t]he transactions all occurred after it was established Betty Glasslein was suffering from diseases which made her incompetent." Praefke asserts that the trial court's summary judgment decision is based upon the disputed material fact regarding Glasslein's competency. However, our holding that an attorney-in-fact may not self-deal based upon oral authorization renders moot the issue of Glasslein's competency to provide such authorization.

instrument creating the power of attorney does not specifically grant such power. One càse stands unequivocally for the proposition that an oral authorization will not permit an attorney-in-fact to make gifts of the principal's assets and that is *Kunewa v. Joshua*, 924 P.2d 559 (Haw. Ct. App. 1996). The court in *Kunewa* offers compelling reasons for the rule prohibiting extrinsic evidence:

> When one considers the manifold opportunities and temptations for self-dealing that are opened up for persons holding general powers of attorney—of which outright transfers for less than value to the attorney-in-fact [himself or] herself are the most obvious—the justification for such a flat rule is apparent. And its justification is made even more apparent when one considers the ease with which such a rule can be accommodated by principals and their draftsmen.

*Id.* at 565 (citation omitted). *See also Fender v. Fender*, 329 S.E.2d 430, 431 (S.C. 1985) (rejecting purported oral authorization to make gifts in order to avoid fraud and abuse); *Estate of Swanson v. United States*, 46 Fed. Cl. 388, 392 (2000) (applying California law to conclude that a power of attorney may only be altered or expanded by another writing), *aff'd*, 2001 WL 569137 (Fed. Cir. May 25, 2001).[4]

---

[4] The court in *Kunewa v. Joshua*, 924 P.2d 559, 565 (Haw. Ct. App. 1996), recognized that several other jurisdictions have adopted a similar rule, such as Alaska, New York and Florida. In addition, the Internal Revenue Service requires that all powers of attorney explicitly grant gift-giving powers if the principal wants the gifted property to be excluded from his or her estate. *See* Hans A. Lapping, *License to Steal: Implied Gift-Giving Authority and Powers of Attorney*, 4 ELDER L.J. 143, 145 (1996). However, the position set forth in *Kunewa* and adopted by the Internal Revenue Service is not universally accepted. Even

¶ 18. We believe the interest of justice supports the application of this rule. A durable gifting power is a particularly dangerous power in that it survives the principal's personal ability to monitor its exercise. According to one commentator, the current widespread financial exploitation of the elderly is directly attributable to durable gifting powers and their inherent potential for fraud and abuse. Hans A. Lapping, *License to Steal: Implied Gift-Giving Authority and Powers of Attorney,* 4 ELDER L.J. 143, 167 (1996). This commentator has called the abuse of powers of attorney an "invisible epidemic" because the victims, who are usually elderly and infirm, may be unaware of what is happening or too embarrassed or frightened to assert their rights. *Id.*

¶ 19. In addition, people of advanced age, especially those who are isolated and dependent, commonly tell friends and family what they believe those individuals want to hear to promote harmony and companionship. It would be imprudent for this court to allow Glasslein's alleged statements to Praefke to negate Glasslein's formal expression of her intent as embodied in the power of attorney agreement. Glasslein could have ensured that Praefke would receive the bulk of her assets by drafting a power of attorney that explicitly

cases which accept the general rule that the authority to make gifts must be explicitly set out in the instrument will at the same time consider other evidentiary and factual circumstances apart from the language in the instrument in deciding whether the attorney-in-fact was authorized to make a gift. *See* Lapping, *supra,* at 160–63 (discussing cases that allow extrinsic evidence of the principal's intent and noting that such cases are a minority position).

authorized self-dealing. That she did not do so is perhaps more telling of her true intent than any alleged statements to Praefke.

¶ 20. In closing, we hold that an attorney-in-fact may not make gratuitous transfers of a principal's assets unless the power of attorney from which his or her authority is derived expressly and unambiguously grants the authority to do so. As a corollary to this bright-line rule, extrinsic evidence of the principal's intent to allow such gifts is not admissible. The power of attorney in this case did not grant such power to Praefke. The affidavit in which Praefke claims she had oral authority to make gratuitous transfers may not be considered by the trial court. Thus, we conclude that by making the unauthorized gratuitous transfers to herself and others Praefke breached her fiduciary duty of loyalty to Glasslein.[5] Gray is entitled to her fractional interest in the American Enterprise annuities, the Putnam investment fund and in the property constituting the gifts. These amounts are set forth in the trial court's summary judgment decision. Praefke does not challenge the trial court's calculations on appeal. The grant of summary judgment in favor of American Enterprise and Gray is affirmed.

*By the Court.*—Order affirmed.

[5] Praefke raises claims of estoppel and bad faith. Because Praefke is not entitled to the funds as sole beneficiary under the annuity contracts, American Enterprise did not act in bad faith by refusing to disburse the funds nor can it be estopped from denying Praefke's claim.