#27195-a-LSW

**2015 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RONALD L. STUDT,                                          Plaintiff and Appellant,

    v.

BLACK HILLS FEDERAL
CREDIT UNION,                                            Defendant,

    and

DAVID SHOLES,                                           Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT GUSINSKY
Judge

* * * *

STANTON A. ANKER of
Anker Law Group, PC
Rapid City, South Dakota                    Attorneys for plaintiff
                                            and appellant.


KYLE L. WIESE of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                    Attorneys for defendant
                                            and appellee.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 20, 2015
OPINION FILED **05/20/15**

WILBUR, Justice

[¶1.] Ronald L. Studt appeals the circuit court's grant of summary judgment in favor of Black Hills Federal Credit Union (BHFCU) and David Sholes. The court determined that the operative language in the power of attorney authorizing Studt to make gifts was too broad and did not specifically permit Studt to self-deal. We affirm.

*Facts and Procedural History*

[¶2.] On October 28, 2008, Dorothy E. McLean invested in a certificate of deposit (the CD) with BHFCU with a maturity date of October 28, 2013. On July 19, 2011, McLean changed the CD's payable-on-death beneficiary from Studt to Sholes. Studt is the only child of McLean. Sholes is McLean's second cousin.

[¶3.] In the summer of 2012 and due to McLean's age and poor health, she moved from Rapid City, South Dakota, to Winona, Minnesota, to live with Studt so that he could care for her. On October 22, 2012, McLean executed a general, durable power of attorney, naming Studt as her attorney-in-fact. Steven Pederson, an attorney from Minnesota, prepared the power of attorney.

[¶4.] According to the undisputed facts of the case, Pederson and McLean discussed the power of attorney before McLean effectuated it. They discussed that Studt, as the attorney-in-fact, would be able to transfer and gift property to any persons or organizations as long as he determined that her financial needs would still be met and that such transfers and gifts were prudent for the purpose of estate

and tax planning.[1] McLean further understood that Studt would have full and complete authority over her assets and financial matters.

[¶5.] After McLean executed the power of attorney, Studt forwarded a copy to BHFCU via email on October 23, 2012. The email directed BHFCU to close all of McLean's accounts and send the assets to Winona. The email further directed BHFCU to forward the funds of the CD to McLean when it matured. Jessica Paul, Senior Personal Financial Officer at BHFCU, acknowledged receipt of Studt's email on November 29, 2012, stating that BHFCU was able to accept the power of attorney. On or about December 10, 2012, all of the accounts, except the CD, were closed as requested. By April 2013, Studt had transferred all of McLean's assets except the CD from South Dakota to Minnesota. The CD was not withdrawn from BHFCU at that time because it had a favorable interest rate and early withdrawal would result in a redemption penalty.

[¶6.] Around April or May 2013, McLean became terminally ill. Studt sent an email to Paul on May 21, 2013, at 2:42 p.m., inquiring who was designated as the beneficiary on the CD. Paul replied via email on May 22, 2013, at 2:32 p.m., stating that the beneficiary on the CD was Sholes. On May 22, 2013, at 6:24 p.m., Studt emailed Paul requesting the beneficiary be changed to him. In that email, Studt advised Paul that McLean was terminally ill, could pass away at any time, and, as a result, there was a need to press the requested change. McLean died on the

---

1. The power of attorney stated as follows:

   Gifts. The power [to] make gifts, in my name, to any person or organizations, but only to the extent that my Attorney determines that my financial needs can be met, and such gifts continue to be prudent estate and tax planning devices.

afternoon of May 23, 2013. At that time, the named beneficiary on the CD was Sholes.

[¶7.]    On May 24, 2013, at 1:18 p.m., Studt sent another email to Paul asking whether the change of beneficiary had been completed. Paul replied to Studt's May 22, 2013, email on May 24, 2013, at 3:06 p.m. She stated that as McLean's attorney-in-fact, Studt would not be allowed to change the beneficiary because only an owner of the CD could change the beneficiary. When Paul responded, Paul was unaware that McLean had passed away on May 23. Thus, Sholes, being the named beneficiary at McLean's death, was to receive the CD's funds.

[¶8.]    On September 11, 2013, Studt filed a declaratory judgment action against BHFCU and Sholes to determine the rightful beneficiary of the CD. The parties filed motions for summary judgment. The circuit court held a hearing on July 22, 2014. Studt argued that the language of the power of attorney granted him broad powers to make gifts to any person, including himself. BHFCU and Sholes argued that the power of attorney did not "clearly and unmistakably" grant Studt the power to self-deal. BHFCU also argued that even if the power of attorney did grant Studt the power to self-deal, BHFCU's policies and procedures did not permit Studt to change the beneficiary on the CD without an exception. The circuit court found that the language in the power of attorney was too broad and too general and did not specifically authorize self-dealing.[2] Studt appeals and argues that the

---

2.    The circuit court also stated that there were some factual disputes regarding the issue of substantial compliance with BHFCU's policies and procedures to change the beneficiary. However, the court found there was no need to reach
(continued . . .)

circuit court erred when it found that the power of attorney did not authorize self-dealing.

*Standard of Review*

[¶9.] "Summary judgment is proper where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Titus v. Chapman*, 2004 S.D. 106, ¶ 13, 687 N.W.2d 918, 923 (quoting SDCL 15-6-56(c)). "The burden is on the moving party to clearly show the absence of genuine issues of material fact and entitlement to judgment as a matter of law." *Id.* (quoting *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D. 1990)). "All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party." *Id.* "Conclusions of law are reviewed under a de novo standard, giving no deference to the circuit court's conclusions of law." *Id.* (quoting *Sherburn v. Patterson Farms, Inc.*, 1999 S.D. 47, ¶ 4, 593 N.W.2d 414, 416).

*Decision*

[¶10.] In *Bienash v. Moller*, "[t]his Court . . . held that 'a power of attorney must be strictly construed and strictly pursued.'" 2006 S.D. 78, ¶ 13, 721 N.W.2d 431, 435 (quoting *In re Guardianship of Blare*, 1999 S.D. 3, ¶ 14, 589 N.W.2d 211, 214). "'Only those powers specified in the document are granted to the attorney-in-fact.'" *Id.* (emphasis omitted) (quoting *Blare*, 1999 S.D. 3, ¶ 14, 589 N.W.2d at 214).

_____

(. . . continued)
a decision on this issue because the power of attorney did not authorize self-dealing under South Dakota law.

The relationship between a principal and an attorney-in-fact is a fiduciary relationship. *See id.* ¶¶ 11-14, 721 N.W.2d at 434-35. "'[A] fiduciary must act with utmost good faith and avoid any act of self-dealing.'" *Id.* ¶ 14, 721 N.W.2d at 435 (quoting *Estate of Stevenson*, 2000 S.D. 24, ¶ 9, 605 N.W.2d 818, 821). "In order for self-dealing to be authorized, the instrument creating the fiduciary duty must provide '*clear and unmistakable language*' authorizing self-dealing acts." *Id.* (emphasis added) (quoting *Stevenson*, 2000 S.D. 24, ¶ 15, 605 N.W.2d at 822). "Thus, if the power to self-deal is not *specifically articulated* in the power of attorney, that power does not exist." *Id.* (emphasis added).

[¶11.] Studt argues that the power of attorney, while broad, permits him to engage in self-dealing. The power of attorney permits Studt to make a gift to "any person." Because "any" is an inclusive rather than exclusive term, he contends the power of attorney permits him to make gifts without restriction, so long as McLean's needs are met. Thus, Studt contends the power of attorney permitted self-dealing.

[¶12.] This case is similar to *Bienash*. In *Bienash*, the attorneys-in-fact sought to engage in acts of self-dealing when they tried to name themselves as the payable-on-death beneficiaries on several CDs owned by the principal. *Id.* ¶¶ 6-7, 721 N.W.2d at 433. In *Bienash*, "[t]he powers granted to [the attorneys-in-fact] under the power of attorney were broad, but general in nature and authorized them to do all things that [the principal] would personally have the right to do." *Id.* ¶ 5, 721 N.W.2d at 432. "The document did not contain any language giving them the power to self-deal." *Id.* ¶ 5, 721 N.W.2d at 433. We held that the power of attorney

did not permit self-dealing in *Bienash* because the language was "broad" and "general" in nature. *Id.* ¶ 15, 721 N.W.2d at 435 ("The power of attorney did *not* specifically authorize [the attorneys-in-fact] to engage in acts of self-dealing and it cannot now be construed to allow such acts.").

[¶13.]     In this case, as in *Bienash*, the power of attorney was broad and did not specifically authorize self-dealing. Studt relies on "broad" and "general" language for the proposition that he may self-deal.[3] Because we are required to strictly construe language in a power of attorney, it cannot be presumed that the power of attorney conferred the power to self-deal absent explicit language. Therefore, we hold that Studt lacked the power to self-deal because the power of attorney did not contain clear and unmistakable language authorizing self-dealing.

[¶14.]     Studt attempts to overcome the lack of the required clear and unmistakable language allowing self-dealing by introducing parol evidence in the form of an affidavit from Pederson. In *Bienash*, we examined cases from Nebraska (*Crosby v. Luehrs*, 669 N.W.2d 635 (Neb. 2003)); Hawaii (*Kunewa v. Joshua*, 924

---

3.     We note that one of the cases we relied on in *Bienash* was a Wisconsin case, *Praefke v. American Enterprise Life Insurance Co.*, 655 N.W.2d 456 (Wis. Ct. App. 2002). In *Praefke*, the court indicated "that self-dealing may be allowed where there is an 'unlimited or unbridled power of disposition.'" 655 N.W.2d at 459 (quoting *Alexopoulos v. Dakouras*, 179 N.W.2d 836, 840 (Wis. 1970)). However, the *Praefke* court went on to say that while "the power of attorney document did contain broad language[,] . . . the power of attorney in *Alexopoulos* had similar language and the supreme court still determined that the fiduciary had breached his duty." *Id.* Thus, it appears that the language authorizing self-dealing must be clear and unmistakable. In any event, South Dakota law clearly states that "the instrument creating the fiduciary duty must provide '*clear and unmistakable language*' authorizing self-dealing acts," *Bienash*, 2006 S.D. 78, ¶¶ 14, 27, 721 N.W.2d at 435, and South Dakota law governs this case.

P.2d 559 (Haw. Ct. App. 1996)); and Wisconsin (*Praefke v. Am. Enter. Life Ins. Co.*, 655 N.W.2d 456 (Wis. Ct. App. 2002)) to determine whether oral, extrinsic evidence may be introduced to prove the principal's intent. After analyzing those cases, we adopted a bright-line rule that oral, extrinsic evidence is inadmissible "to raise a factual issue." *Bienash*, 2006 S.D. 78, ¶¶ 24, 27, 721 N.W.2d at 437. An affidavit is merely oral evidence reduced to writing. Therefore, the affidavit is inadmissible to determine whether McLean intended to allow Studt to self-deal.

[¶15.]     Consequently, we affirm the circuit court.

[¶16.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.